UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NANCY K. WOODROW,

                      Plaintiff,

   v.                                              **DECISION AND ORDER**
                                                              05-CV-359S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

      1.      Plaintiff Nancy K. Woodrow challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since June 6, 2002, due to mental illness and a back ailment. Plaintiff contends that her mental and physical impairments render her unable to work. She therefore asserts that she is entitled to disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on September 13, 2002. Her application was denied on January 17, 2003. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Donald T. McDougall on June 8, 2004, at which time Plaintiff appeared with counsel and presented testimony. An impartial vocational expert, Tim Janikowski, Ph. D., also appeared and testified at the hearing. The ALJ considered the case *de novo*, and on August 2, 2004, issued a decision denying Plaintiff's application for benefits. On March 24, 2005, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on May 20, 2005,

challenging Defendant's final decision.[1]

3.      On October 31, 2005, and November 30, 2005, respectively, Defendant and Plaintiff filed Motions for Judgment on the Pleadings pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure.[2]  After full briefing, this Court deemed oral argument unnecessary and took the motions under advisement.

4.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.      "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1] The ALJ's August 2, 2004 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) was erroneously docketed as a Motion for Summary Judgment.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 25); (2) Plaintiff's grade I spondylolisthesis at L5-S1, with stenosis and lumbar instability, status post lumbar fusion with instrumentation; asthma/sinusitis; and paranoid schizophrenia are considered "severe" impairments within the meaning of the Act (R. at 25); (3) Plaintiff's impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 25); (4) Plaintiff retained the residual functional capacity to perform light work with certain restrictions[3] (R.

---

[3]In particular, the ALJ found that Plaintiff could perform light work that affords her the ability to change positions briefly at least every one-half hour, requiring no kneeling, crawling, climbing of ladders,

4

at 25-26); and, (5) Plaintiff was unable to perform her past relevant work as a shoe department manager because it exceeded her restrictions. (R. at 26.) However, after considering Plaintiff's age, education, work experience, and her residual functional capacity, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at any time prior to his decision. (R. at 26.)

10. Plaintiff's first challenge to the ALJ's decision is that the ALJ failed to adequately develop the record regarding her mental health impairment. The ALJ found that "the overall record establishes that the claimant has a history of paranoid schizophrenia, but that it is treated successfully with medications." (R. at 16.) Plaintiff claims that Dr. Tony Ranciello, a psychiatrist, treated her for schizophrenia once every three months. She argues that the ALJ should have contacted Dr. Ranciello to obtain his medical opinion before reaching his determination. Plaintiff argues that because the ALJ did not contact Dr. Ranciello, he failed to fully develop the record regarding her mental health impairment. This argument is unpersuasive.

First, the record demonstrates that Dr. Ranciello had a history of being non-responsive to requests for information. For example, Dr. M. Sadiqur Rahman, a state agency physician, documented at least three attempts to contact Dr. Ranciello for information relative to Plaintiff's mental health. (R. 145, 160, 161.) Dr. Ranciello never responded to Dr. Rahman's requests. In addition, Plaintiff's attorney informed the ALJ that

---

ropes, scaffolds, stairs, or ramps, and no more than occasional balancing, stooping or crouching. Plaintiff's tasks should require no more than occasional bending at the waist, and never bending more than 45 degrees. She must never be required to perform assembly line work and only rarely be required to perform fast-paced work or to use detailed or complex instructions. The Plaintiff's tasks should require no more than occasional changes in her work setting, or the requirement to set workplace goals. She must also work in a controlled environment with no exposure to extremes of fumes, dusts, gases, or other respiratory irritants. (R. at 25-26.)

his own requests for information were also ignored by Dr. Ranciello. (R. at 236.)

Second, Plaintiff essentially waived any claim to the materiality of Dr. Ranciello's records when her lawyer advised the ALJ that further efforts to contact Dr. Ranciello would not be necessary. At the hearing, the ALJ offered to contact Dr. Ranciello himself and issue a subpoena, if required. (R. at 236.) Plaintiff's counsel responded to this offer by stating, "I think there's enough of a physical situation here that I'm not sure if the mental aspect of it comes into play, because [Plaintiff] worked consistently through the '90s, despite this mental condition." (R. at 236-37.) Counsel's statement wholly supports the ALJ's finding that Plaintiff's mental health impairment was successfully being treated with medications. (R. at 16.)

Third, it appears that the ALJ's offer to contact Dr. Ranciello was contingent on Plaintiff's counsel sending the ALJ a letter providing the necessary information for the ALJ to follow-up with Dr. Ranciello. (R. at 236.) It does not appear from the record (and Plaintiff does not point to any evidence in the record) that Plaintiff's counsel ever provided the ALJ with the information he requested.

In sum, this Court finds no error in the ALJ's failure to contact Dr. Ranciello. It is clear from the record that reasonable efforts were made to get information from Dr. Ranciello, and that any further efforts by the ALJ would have been futile. See, e.g., 20 C.F.R. § 404.1512(d) (requiring that reasonable efforts be made by the Commissioner to obtain treating source records). Moreover, in light of Plaintiff's counsel's statement to the ALJ that Plaintiff's mental condition was not material to her claim, this Court finds that under these circumstances, the ALJ did not commit reversible error by failing to contact the physician post-hearing.

11.     Plaintiff's second challenge to the ALJ's decision is that the ALJ failed to properly apply the treating physician rule.  According to the "treating physician rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (3) consistency, (4) specialization of treating physician, and (5) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

James Lawrence, M.D., and Douglas B. Moreland, M.D., are Plaintiff's treating physicians.  Plaintiff asserts that the ALJ should have relied on their opinions, rather than on those of the non-treating physicians.  A review of the record reveals that the ALJ discussed at length the findings and opinions of Drs. Lawrence and Moreland. (R. at 18-21,

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

23.)  The ALJ discussed the fact that Dr. Lawrence expressed his belief that Plaintiff was temporarily disabled on several occasions, but the ALJ also noted that Dr. Lawrence failed to report any functional limitations that would exclude Plaintiff from work.  (R. at 23.)  Likewise, Dr. Moreland found Plaintiff to be temporarily disabled, but did not describe any functional limitations.  (R. at 23.)

Plaintiff argues that the ALJ did not give appropriate weight to the opinions of Drs. Lawrence and Moreland, including their statements regarding her temporary disability.  However, as the ALJ correctly pointed out in his written decision, such conclusory statements made by doctors are not controlling because it is the Commissioner's task to determine whether an individual is disabled within the meaning of the Act.  See 20 C.F.R. § 404.1527; R. at 23.  Moreover, these opinions of temporary disability are not supported by a discussion of functional limitations.  Thus, the ALJ did not err by declining to afford these conclusions controlling weight.

Moreover, in order to be entitled to controlling weight under the treating physician rule, the treating physician's opinion must be consistent with other medical evidence in the record.  20 C.F.R. § 404.1527(d)(2).  The ALJ considered the other physicians' opinions, such as those of Drs. Severson, Hamil, Cohen, Samie, Kinkel, and Kalanaros.  (R. at 18-21.)  For example, both Drs. Samie and Kinkel opined that Plaintiff could return to work.  Thus, to the extent that Drs. Lawrence and Moreland opined that Plaintiff was unable to work, these opinions are not only conclusory and unsupported by functional assessments, but also inconsistent with other medical evidence in the record.  The opinions are therefore not entitled to controlling weight.  See  20 C.F.R. § 404.1527(d)(2); see also Green-Younger, 2003 WL 21545097, at *6.

In this Court's view, the ALJ sufficiently described his treatment of the opinions of Drs. Lawrence and Moreland when he indicated that he was giving them little weight because they were conclusory and not supported by the evidence as a whole, a conclusion that this Court finds is supported by the record. (R. at 23.) Thus, there is no error in the application of the treating physician rule.

12.   Plaintiff's third challenge to the ALJ's decision is that substantial evidence in the record does not support the ALJ's residual functional capacity assessment. In particular, Plaintiff argues that (1) the ALJ did not consider Plaintiff's mental impairment, (2) the ALJ did not indicate what weight he afforded Dr. Rahman's opinion, and (3) there is no substantial evidence supporting the conclusion that work exists in the national economy that Plaintiff is able to perform.

First, as discussed above, the ALJ did, in fact, consider Plaintiff's mental impairment and devoted several pages to his analysis. (R. at 16-18.) His conclusions that Plaintiff's mental impairment was successfully being treated by medication and that the degree of functional limitations documented in the record did not warrant a finding of presumptive disability are supported by the record. (R. at 16.)

Second, the ALJ reiterated Dr. Rahman's finding that Plaintiff had no restriction on her daily living activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no repeated episodes of decompensation. (R. at 17.) Moreover, he expressly considered Dr. Rahman's opinion and clearly indicated that he was affording it significant weight because it was consistent with evidence in the record. (R. at 17.)

Finally, the ALJ properly relied on the testimony of the vocational expert in reaching

his conclusion that jobs existed in the national economy that Plaintiff could perform. The vocational expert, Dr. Janikowski, testified that an individual of Plaintiff's age, education, past relevant work experience and residual functional capacity could work in a number of positions that are available in the national economy. (R. at 24-25.) The ALJ was entitled to rely on this testimony in reaching his final residual functional capacity determination. Consequently, this Court finds that the ALJ's residual functional capacity assessment is supported by substantial evidence in the record.

13. Plaintiff's final argument is that the ALJ improperly evaluated her credibility. The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible. (R. at 25.) Credibility determinations are generally reserved to the Commissioner, not the reviewing court. Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984)(holding that it is the job of the Commissioner and not the reviewing court to make determinations on the credibility of witnesses); Carrol v. Sec'y of Health and Human Svcs., 705 F.2d 638, 642 (2d Cir. 1982)(similar).

From a review of the record, this Court finds that the ALJ had a reasonable basis upon which to conclude that Plaintiff's testimony was not totally credible. Aside from the fact that the ALJ presided over the hearing and was in the best position to observe Plaintiff's demeanor, the ALJ made specific references to the contradictions in Plaintiff's testimony. Throughout his decision, the ALJ cited to inconsistencies between Plaintiff's testimony and the medical evidence, and testimony provided by Plaintiff's mother and physicians. The ALJ further noted that Plaintiff's own statements regarding her physical condition sometimes changed. (R. at 18-22). Consequently, this Court finds no cause to disrupt the ALJ's credibility finding. See Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.

1979)("The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.").

14. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case. Specifically, the medical evidence and opinions contained in the record (including the vocational opinion), in conjunction with Plaintiff's testimony, support the ALJ's determination. This Court finds no reversible error in the ALJ's overall weighing of the evidence or his credibility determination, and finds that substantial evidence of record supports his decision. Accordingly, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 9) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:   August 23, 2006
         Buffalo, New York

                                              /s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge